## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.

MAURICIO CARDERO, individually and on
behalf of all others similarly situated,

    *Plaintiff*,

vs.

MOMENTUM CAPITAL GROUP LLC
d/b/a GET WORKING CAPITAL,

    *Defendant*.

_____/

CLASS ACTION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Mauricio Cardero ("Plaintiff") brings this class action against Defendant, Momentum Capital Group LLC d/b/a Get Working Capital ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    This is a class action under the 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA") and under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

2.    Defendant is a financing solution company that provides capital for consumers and businesses.

_____

[1] The amendment to the FTSA became effective on July 1, 2021.

3.     To promote its goods and services, Defendant engages in aggressive telephonic sales calls to consumers without having secured prior express written consent as required under the FTSA, and with no regards for consumers' rights under the TCPA.

4.     Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

5.     Through this action, Plaintiff seeks an injunction and statutory damages on behalf of himself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

6.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

7.     Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of telephone number 305-***-7473 (the "7473 Number") that received Defendant's telephonic sales calls.

8.     Defendant is, and at all times relevant hereto was, a Florida LLC and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).  Defendant maintains its primary place of business and headquarters in Fort Lauderdale, Florida. Defendant directs, markets, and provides business activities throughout the State of Florida and the United States.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that

of Defendant.  Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA and the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

10.     Defendant is subject to specific personal jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed, or caused to be initiated and directed, calls into Florida in violation of the FTSA and the TCPA. Specifically, Defendant initiated and directed, or caused to be initiated and directed, the transmission of calls into Florida. Plaintiff's claims for violation of the FTSA and the TCPA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's calls, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Florida.

11.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## **THE TCPA**

12.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

13.     The TCPA exists to prevent communications like the ones described within this Complaint.  "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

16.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers.

*See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

17.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).   In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id*.

22.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

24.     As held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"  *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTS

25.     Over the past year, Defendant began bombarding Plaintiff with telephonic sales calls in the form of prerecorded messages to Plaintiff's cellular telephone number ending in 7473.

26.     Because Plaintiff did not answer his telephone after it rang, a voicemail containing a prerecorded message was left on Plaintiff's phone each time.

27.     The following is a transcript of the voicemail that was left in Plaintiff's voicemail box:

> Hi it's Tie with Momentum Capital. I'm a private lender who can fund up to ten million dollars in working capital for your small business. With fast approval, flexible terms, and no hassles, I can get your working capital to you within a few hours and can consolidate up to five loans. How much money can your business use? To get started, get to our website now, it's at www.getworkingcapital.net. That's www.getworkingcapital.net. Again, getworkingcapital.net.

28.     The prerecorded calls at issue, which were left as voicemails, were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

29.     When Plaintiff listened to the voicemail he was easily able to determine that it was a prerecorded message. *Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

30.     Defendant's prerecorded calls constitute telemarketing because they encourage the future purchase or investment in property, goods, and/or services, i.e., selling Plaintiff loans.

31.     Defendant's calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

32.     Plaintiff's 7473 Number has been registered with the national do-not-call registry since February 23, 2009, and at all times relevant to this action.

33.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

34.     The prerecorded calls Plaintiff received originated from telephone number 850-388-6647, a telephone number owned and/or operated by or on behalf of Defendant.

35.     Plaintiff received the subject call with a prerecorded voice within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other prerecorded messages to be sent to individuals residing within this judicial district.

36.     At no point in time did Plaintiff provide Defendant with his express consent to be contacted with a prerecorded call.

37.     Plaintiff is the subscriber and sole user of the 7473 Number and is financially responsible for phone service to the 7473 Number.

38.     Defendant's calls were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

39.     To constitute valid consent under the FTSA, the called party must, inter alia, "[c]learly authorize[] the person making or allowing the placement of a telephonic sales call" to place such call "using an automated system for the selection or dialing of telephone numbers[.]" Fla. Stat. § 501.059(1)(g).

40.     Upon information and belief, Defendant caused similar telephonic sales calls to be sent to individuals residing in Florida and throughout the United States.

41.     Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all voice messages sent advertising/promoting its services and goods.

These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

42.     To send the voice messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of voice messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

43.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its voice message advertisements at a nominal cost to Defendant.

44.     Defendant would be able to conduct its business operations without sending automated voice messages to consumers.

45.     Defendant would be able to send automated voice messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending voice messages.

46.     Defendant would be able to send voice messages to consumers without consent by utilizing a non-automated voice messaging system.

47.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting voice messages.

48.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

49.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

50.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

51.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

52.     The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

53.     The Platform has the capacity to schedule the time and date for future transmission of voice messages, which was in fact utilized by Defendant.

54.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

55.     Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and wasted time.

56.     Defendant's unsolicited voice messages caused Plaintiff actual harm.  Specifically, Plaintiff estimates that he has wasted fifteen minutes reviewing Defendant's unwanted messages.

57.     Furthermore, Defendant's voice message took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited voice messages like Defendant's poses a real risk of ultimately rendering the phone unusable for voice messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that voice message solicitations present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

## CLASS ALLEGATIONS

**PROPOSED CLASS**

58.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and

on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23.

The "Class" that Plaintiff seeks to represent is defined as:

> **No Consent Class: All persons within the United States who, within
> the four years prior to the filing of this Complaint, were sent a call
> using an artificial or prerecorded voice, from Defendant or anyone
> on Defendant's behalf, to said person's cellular telephone number,
> without emergency purpose and without the recipient's prior
> express written consent.**

> **Do Not Call Registry Class: All persons in the United States who
> from four years prior to the filing of this action (1) were sent a voice
> message by or on behalf of Defendant; (2) more than one time
> within any 12-month period; (3) where the person's telephone
> number had been listed on the National Do Not Call Registry for at
> least thirty days; (4) for the purpose of selling Defendant's products
> and services; and (5) for whom Defendant claims (a) it did not
> obtain prior express written consent, or (b) it obtained prior
> express written consent in the same manner as Defendant claims it
> supposedly obtained prior express written consent to call the
> Plaintiff.**

59.     Defendant and its employees or agents are excluded from the Class. Plaintiff does

not know the exact number of members in the Class but believes the Class members number in the

several thousands, if not more.

**NUMEROSITY**

60.     Upon information and belief, Defendant has placed telephonic sales calls to

telephone numbers belonging to thousands of consumers via an automated dialer without their

prior express written consent and who were registered on the national do not call registry. The

members of the Class, therefore, are believed to be so numerous that joinder of all members is

impracticable.

61.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

62.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

[i] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

[ii] Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

[iii] Whether Defendant utilized an automated system for the dialing or selection of numbers to be called;

[iv] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[v] Whether Defendant's conduct was knowing and willful; and

[vi] Whether Defendant is liable for damages, and the amount of such damages.

63.     The common questions in this case are capable of common answers.  If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

64.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories and Plaintiff is not subject to unique affirmative defenses that threaten to dominate the litigation.

12

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

65.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class. The undersigned are experienced class action litigators, including in the specific context of the TCPA and FTSA, and neither Plaintiff nor the undersigned have any interests in conflict with those of the putative Class.

### SUPERIORITY AND PREDOMINANCE

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small (at most $1,500.00) to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

67.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

68.     Moreover, the previously articulated common questions predominate over individual questions. Defendant used the same automated system to send materially identical telemarketing messages to all members of the putative Class. Whether the fact that Class members

provided information into a generic data harvesting lead generator constitutes valid consent within the meaning of the TCPA and the FTSA is a question the answer to which is equally applicable to all members of the Class. As such, there are no material individual questions at all—but even if there were, they certainly do not predominate over the common questions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the No Consent Class)**

69.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

71.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(g).

72.     "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

14

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

73. Defendant failed to secure prior express written consent within the meaning of the FTSA from Plaintiff and the Class members.

74. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without their prior express written consent.

75. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

76. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

**COUNT II**
**VIOLATION OF TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the No Consent Class)**

77.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

78.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

79.     Defendant – or third parties directed by Defendant – transmitted calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and members of the putative class.

80.     These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

81.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an artificial or prerecorded voice to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

82.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful or knowing.

83.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

84.     Because Defendant knew or should have known that Plaintiff and the other members of the putative Class had not given prior express consent to receive its prerecorded calls to their cellular telephones the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

**COUNT III**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

85.     Plaintiff repeats and realleges the paragraphs 1 through 68 of this Complaint and incorporates them by reference herein.

86.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

87.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

88.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

89.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

90.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

91.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages for Plaintiff and each member of the Class, including treble damages;

c)  An order declaring that Defendant's actions, as set out above, violate the FTSA;

d)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

e)  An injunction requiring Defendant to cease all telephonic sales calls made without valid consent under the TCPA and the FTSA, and to otherwise protect the interests of the Class;

f)  Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: November 21, 2022.                 Respectfully submitted,

**SHAMIS & GENTILE P.A.**
/s/ Andrew Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
/s/ Garrett Berg
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg
Florida Bar No. 0100537

19

scott@edelsberglaw.com
Christopher Gold
chris@edelsberglaw.com
Florida Bar No. 088733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915